UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

NATHANIEL L. ADDERLY, :
:
    Plaintiff :
:
v. : CIVIL NO. 3:CV-11-0694
:
C.O. EIDEM, et al., : (Judge Kosik)
:
    Defendants :

FILED
SCRANTON
FEB 1 8 2014

PER _____
DEPUTY CLERK

## MEMORANDUM

Plaintiff, Nathaniel Adderly, filed this civil rights action pursuant to 42 U.S.C. § 1983 against numerous employees at the State Correctional Institution at Frackville (SCI-Frackville), Pennsylvania, and Dorina Varner, Chief Grievance Officer for the Pennsylvania Department of Corrections ("DOC"). The matter proceeds on an amended complaint. (Doc. 33.) Pending is Defendants' motion to dismiss the amended complaint. (Doc. 37.) For the reasons that follow, the motion will be granted in part and denied in part.

**I.   Relevant Procedural History**

Plaintiff filed his original complaint on April 13, 2011. The complaint was dated April 10, 2011. He named 17 employees at SCI-Frackville and DOC Chief Grievance Officer Dorina Varner. The claims alleged appeared to span the time

period from October of 2007 through April 24, 2010, the date Plaintiff was transferred from SCI-Frackville. The claims included general assertions of assault, conspiracy, false misconducts, denial of nourishment, harassment, food tampering, retaliation, and the improper denial of grievances. On August 6, 2012, a Memorandum and Order was issued addressing a motion to dismiss the original complaint filed by Defendants. (Docs. 17, 18.) The court found that Defendants' motion to dismiss portions of the complaint should be granted with respect to the claims set forth against Defendants Eidem, Cowher, Glenn, Saxton, Balonis, Reno, Alshefski, Resendes, Popson, Wenerowicz, Kovalchik, Derfler, Shannon, Braim, Damitter, Alberts, Jacobs, Svab and Dando due to Plaintiff's failure to allege any details and specific dates with respect to his claims.[1] However, Plaintiff was afforded the opportunity to submit an amended complaint with respect to his allegations.

In the August 6, 2012 Memorandum, the court also dismissed Plaintiff's access to the courts claim against Defendant Dando. He alleged that Dando violated his rights by taking property from him relevant to cases Plaintiff had pending in the courts that were ultimately dismissed. Because Plaintiff failed to provide details with respect to the actual injury suffered, see Lewis v. Casey, 518 U.S. 343 (1996), Defendants' motion was granted on this claim. However, Plaintiff was also afforded

---

[1] Defendants did not seek to dismiss Plaintiff's allegations that (1) Defendant Weidow served him a food tray that contained a rock and (2) Defendant Kufro retaliated against him for complaining about his food on March 4, 2010.

2

the chance to cure these deficiencies in any amended complaint filed.

The court also granted Defendants' motion to dismiss the Eighth Amendment claim against Defendant Kufro for intentionally unwrapping his food and throwing it onto a filthy food tray on March 4, 2010. Failing to provide Plaintiff with sanitary nourishment on one occasion was found not to rise to the level of an Eighth Amendment violation, and this claim was dismissed. In addition, all claims set forth against Defendant Varner for failure to respond favorably to grievances were also dismissed, as were all claims seeking injunctive and declaratory relief. (Id. at 9-12.)

The court further addressed the issue of statute of limitations and agreed with Defendants that any claims arising prior to April 10, 2009 were barred. Plaintiff filed his original complaint on April 13, 2011, but it was dated April 10, 2011. As such, any viable claim would have to be based on events occurring on April 10, 2009 or thereafter. Many of the claims in the original complaint appeared to have occurred prior to that time without any demonstration by Plaintiff why the statute of limitations should be extended to include such claims. In submitting an amended complaint, Plaintiff was advised to include only those claims not barred by the statute of limitations. (Id. 13-14.)

On April 25, 2013, Plaintiff submitted his amended complaint. (Doc. 33.) The amended complaint names the same Defendants as in the original complaint, is 33 pages in length, and contains numerous claims. Pending is Defendants' motion to

dismiss the amended complaint.

## II. Allegations in the Amended Complaint

Plaintiff categorizes his claims in the amended complaint into various sections. He first sets forth October 2007 claims of retaliation against Defendants Reno and Wenerowicz. He next sets forth claims from December 2007 through April 29, 2010 against Defendant Reno for constant unwarranted frisk searches conducted. Plaintiff claims that Reno admitted the searches were sexually motivated. Plaintiff also alleges that he experienced adversity from John Does in March of 2008 following a deposition. He claims he was screamed at, issued false misconducts, and separated from his legal materials.

It is further alleged that from April 5, 2009 through April 29, 2010, Defendants Eidem, Cowher, Glenn, Saxton and Balonis violated Plaintiff's rights. In particular, on April 5, 2009, Eidem stopped Plaintiff on his way to the showers and said he did not want to see Plaintiff's mesh shower bag. Plaintiff returned to his cell to place the bag in a sweatshirt pocket, and then returned to the shower line. Upon doing so, Eidem ordered Plaintiff up against the wall, frisked him and told him he was going to the hole. Defendant Balonis saw the confrontation and Plaintiff told him what had occurred. At this point, Eidem struck Plaintiff in the arm with handcuffs, slammed him to the ground, choked and punched him. Defendant Cowher also joined in the assault and hurt Plaintiff's previously injured pinky finger. Defendant Saxton

4

cheered Eidem and Cowher on for awhile before telling them to stop. Plaintiff states he suffered various injuries. He was thereafter taken to the RHU and issued a false misconduct report. On the same date, April 5, 2009, Defendant Braim ignored Plaintiff's complaint about the RHU cell he was placed in because it had no mattress, sheets, pillows or blankets. Braim ignored the complaints.

On April 6, 2009, Plaintiff alleges that he complained to the State Police about the incident occurring the previous day. The affidavit of probable cause prepared by the State Police revealed that Defendants actually brought criminal charges against Plaintiff. Defendants later gave testimony at the Schuylkill County Court with respect to this matter, but Plaintiff was found not guilty in March of 2010.

Plaintiff also alleges that from April 6, 2010 through April 29, 2010, Defendants Reno, Alshefski, Svab, Jacobs, Alberts and Resendes failed to provide him with nourishment and retaliated against him for exercising his First Amendment rights. He claims they bypassed his cell during meal distribution or gave him empty trays just for the sake of the cameras. He specifically references Defendants Reno and Alshefski with respect to this conduct and claims that it went on for weeks. Plaintiff also claims that Defendant Albert gave him a food tray that was saturated with salt, and therefore inedible. When Plaintiff complained about this wrongdoing to Defendant Resendes, as the senior officer, he failed to protect Plaintiff. Plaintiff claims that Resendes closed his arm in the food aperture while Plaintiff was placing

5

his tray there in January of 2010, in retaliation for filing complaints against various SCI-Frackville employees, including Resendes.

In the amended complaint, Plaintiff also asserts that Defendant Wiedow inserted a jagged rock into his chili on February 27, 2010, causing him to choke. He states this happened after he made complaints about various SCI-Frackville officials. It is further alleged that Defendant Kufro and Resendes unwrapped a food loaf on March 4, 2010, and placed it on a dirty tray.[2]

The amended complaint also contains allegations against Eidem, Cowher and Glenn with respect to a misconduct hearing conducted on April 10, 2009. According to Plaintiff, he had a hearing scheduled that he thought was with respect to a misconduct issued by Defendant Eidem. Upon arrival, the hearing examiner said it was with respect to 3 misconducts - the other two were issued by Defendants Cowher and Glenn. Plaintiff claims that he never received misconducts from these Defendants and believes that they were issued in retaliation for the complaints he made to the state police about Defendants. Plaintiff was found guilty of all three misconducts and received 90 days in disciplinary custody.

Plaintiff also states that Defendants Braim and Popson refused to give him

---

[2] This claim was previously dismissed by the court in the Memorandum and Order dated August 6, 2012, and as such, it will not be addressed herein. Although it was asserted only against Kufro in the original complaint, the basis for dismissal remains the same with respect to Resendes.

6

property from April 5, 2009 through April 29, 2010. The property included two dockets to federal cases "07-507 and 07-1169." He does not allege any injury as a result of this deprivation.

Plaintiff made complaints about many of the foregoing events to Superintendent Shannon during the time period from April 5, 2009 through April 29, 2010 through grievances and requests, but he failed to remedy any of the wrongs. He did tell Plaintiff to give him a year and he would make sure Plaintiff would be moved from SCI-Frackville. He was transferred approximately 1 year and 24 days later. Complaints and grievances were also submitted during this same time span to Deputy Superintendent Wenerowicz and Deputies Kovalchik and Derfler, who also failed to remedy the situation.

Counselor Damitter is alleged to have been prejudiced toward Plaintiff from May of 2008 through April 29, 2010 when he failed to notify him of his eligibility for idle pay. Damitter also asked Plaintiff lewd questions during a parole meeting.

Following the assault by Resendes in January of 2010, Plaintiff states Superintendent Wenerowicz visited him in medical isolation where Plaintiff gave him copies of grievance appeals. Afterward, Plaintiff was moved back on the block where Resendes was assigned pursuant to Wenerowicz's orders. An extraction team was utilized, of which Defendant Eidem was a member, and Eidem "sprayed Plaintiff in the face" for the purpose of causing him pain. Eidem also took Plaintiff's glasses and

7

and broke them. According to Plaintiff, the glasses were "crucial evidence" in Adderly v. Ruddy, 07-1169, a case that he had pending.

Plaintiff also generally alleges that between February 27, 2010 and April 29, 2010, Defendant Dando ignored complaints that he was denied his property while housed in the RHU. Apparently, Plaintiff had drafted a grievance and then was taken out to a court appearance. When he returned, the grievance was missing. He also claims other property was missing including handwritten novels Plaintiff had prepared and planned to publish. He claims Dando stole his documents and other property in retaliation for Plaintiff threatening to sue him.

Finally, Plaintiff claims that between the time period from April 5, 2009 through April 10, 2010, Chief Grievance Officer Varner had the power to remedy his wrongs, but failed to do so. He claims he filed grievance appeals with her, but all to no avail.[3] Based upon the foregoing allegations, Adderly seeks declaratory, injunctive, compensatory and punitive relief.[4]

### III. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6),

---

[3] Plaintiff brought these same claims in his original complaint and they were dismissed. As such, these claims will not be addressed herein.

[4] All requests for declaratory and injunctive relief have also been dismissed since Plaintiff is no longer confined at the prison where the alleged events took place.

8

we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. at 556. "'[L]abels and conclusions are not enough, and a court 'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

## IV. Discussion

### A. Statute of Limitations

In their motion to dismiss the amended complaint, Defendants first argue that all claims relating to events occurring prior to April 10, 2009 must be dismissed as barred by the statute of limitations. Without unnecessary elaboration, for the reasons set forth in the court's Memorandum of August 6, 2012, any claims set forth in the amended complaint arising prior to April 10, 2012 will be dismissed. Plaintiff was advised that he was only to include timely claims in his amended complaint unless he was able to demonstrate applicable tolling principles. While he has failed to point to any basis for the application of any tolling, he continues to include stale claims in his amended complaint. These claims include the following: (1) the October 2007 retaliation by Defendants Reno and Wenerowicz; (2) any improper frisk searches by Defendant Reno from December 2007 though April 9, 2009; (3) claims against Doe Defendants in March of 2008; (4) assaults, failure to protect and other claims occurring on April 5, 2009 alleged against Defendants Eidem, Cowher, Glenn, Saxton and Balonis; (5) challenges to RHU "hard cell" on April 5, 2009 against Defendant Braim; (6) any failure to provide food, deprivation of property and retaliation claims arising between April 6, 2010 and April 9, 2010; and (7) claims against Defendant Damitter arising between May of 2008 through April 9, 2009. All of the foregoing

10

claims will be dismissed as barred by the statute of limitations.

### B. Claims against Defendants Reno, Popson and Derfler

Defendants argue that all claims set forth against Defendants Reno, Popson and Derfler should be dismissed in that said Defendants have never been served with the complaint in this action. Because the claims set forth against Popson and Derfler fail to state a claim in any event, the lack of service issue will not be addressed. With respect to Defendant Reno, there are claims in the amended complaint that will go forward. As such, the service issue will be examined.

On August 24, 2011, service of the original complaint was directed on all defendants named therein, including Reno. (Doc. 6.) A waiver of service was returned on behalf of numerous defendants by counsel on September 26, 2011, however Reno was not one of the represented Defendants listed on the waiver. Since that time, any filings submitted by counsel on behalf of Defendants were not submitted on behalf of Reno. From the docket, there is no indication that Reno has ever been served with the complaint. In light of such, the United States Marshal will be directed to serve Defendant Reno with a copy of the amended complaint (Doc. 33) and this opinion.

### C. Access to the courts claims

Defendants seek to dismiss Plaintiff's access to the courts claims. In construing the amended complaint liberally, Plaintiff appears to allege that

Defendants Braim and Popson, at some point in April of 2009, gave him "the runaround" and refused to provide him with the dockets in two (2) of Plaintiff's federal cases. He further alleges that on February 24, 2010, Defendant Eidem took his glasses and broke them. The glasses were allegedly "critical evidence" in one of those federal cases. Finally, he maintains that between February 27, 2010 and April 29, 2010, Defendant Dando confiscated documents that were "tangible evidence" and that this was detrimental to his court cases and appeals.

In the court's Memorandum of August 6, 2012, these claims were addressed and Plaintiff advised of the necessary requirements for stating a viable access to the courts claim. Specifically, he was informed that a prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim. See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); Christopher v. Harbury, 536 U.S. 403, 415 (2002). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim," see Lewis, 518 U.S. at 354, but rather is limited to an inmate's attack on their sentence, either directly or collaterally, and the conditions of confinement. Id. at 355.

Plaintiff was advised that with respect to his access to the courts claims, he failed to provide information with respect to which civil cases/appeals were thwarted

and to what they related. More importantly, even if he could establish that his litigating efforts had been frustrated by the named Defendants in pursuing a challenge to his conviction or a claim related to his conditions of confinement, he failed to establish the actual injury suffered. He was afforded the opportunity to rectify these deficiencies in his amended complaint. However, he fails to do so. While he mentions two federal cases he claims were compromised by Defendants' conduct, he does not set forth any actual injury suffered as a result thereof. For these reasons, the motion to dismiss will be granted with respect to the access to the courts claims.

### D. Failure to provide sufficient notice to Defendants of claims raised against them

#### 1. Claims subject to dismissal

Defendants claim that as in his original complaint, Plaintiff sets forth nothing more than general conclusory statements of wrongdoing against them in his amended complaint. For instance, he provides only two or three specific dates and fails to allege facts placing them on notice as to the specific conduct that violated his rights. They also argue that many of Plaintiff's allegations lack personal involvement and are based upon a theory of <u>respondeat superior</u>. While the court agrees that in many instances this is true, there are also some claims set forth in the complaint that adequately state a claim against specific Defendants and survive the instant motion to

dismiss.[5] The court will now address all remaining claims in the complaint.

In order to prevail in a § 1983 action, Plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Section 1983 liability cannot be predicated solely on respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Rode, 845 F.2d at 1208, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Moreover, if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d

---

[5] In so holding, the court expresses no opinion as to the ultimate success of these claims.

...

at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006). Further, simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate they had the requisite personal involvement. See Rivera v. Fischer, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(Finding that many courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.).

In sifting through the 33 pages of the amended complaint, the court first agrees that the claims set forth against Defendants Shannon, Wenerowicz, Kovalchik and Derfler are subject to dismissal on the basis of lack of personal involvement. Plaintiff seeks to impose liability purely on the basis that, after informing said officials of alleged unconstitutional conduct by the other Defendants, these supervisory officials failed to respond favorably to his grievances, complaints and letters. Liability cannot be imposed upon this basis, and these claims are subject to dismissal.

Also subject to dismissal are the claims that Defendant Alberts gave Plaintiff a food tray on one occasion saturated in salt, and that an unidentified Defendant gave him a food tray on one occasion with only two "hairline" strips of pancakes. These claims do not rise to the level of constitutional violations. Plaintiff also fails to state a claim with respect to any deprivation of personal property. He contends that Defendant Dando confiscated written novels from his cell. A civil rights claim cannot be brought to vindicate a prisoner's right to property when the deprivation

occurs as a result of a tortious and unauthorized act where an adequate remedy exists to compensate those who have suffered tortious loss at the hand of the state. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). The United States Supreme Court has extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a civil rights claim is not available. Hudson v. Palmer, 468 U.S. 517, 532-33 (1984). Plaintiff can assert any claim relating to the deprivation of his personal property via the DOC's administrative remedy system. He may also assert a loss of property claim in the Pennsylvania state court.

Finally, Plaintiff's conclusory allegations against Counselor Damitter will also be dismissed. Plaintiff vaguely claims that during the time span from May of 2008 through April 29, 2010, Damitter was "prejudiced" against him because he failed to notify him of his eligibility for idle pay and because he asked him lewd questions during a parole meeting. These allegations fail to state a viable claim for relief. Moreover, any claim that Damitter's actions were driven by retaliation are totally unsupported by the allegations set forth in the complaint.

    2.   Surviving claims

The court finds the following claims to be both timely and sufficiently stated against Defendants to proceed at this juncture: (1) sexually motivated frisk searches by Defendant Reno between April 10, 2009 and April of 2010; (2) claims against Defendants Reno and Alshefski for withholding food during the time period from

16

April 10, 2009 through April 29, 2010[6]; (3) excessive force claim against Defendant Resendes in January of 2010 when he intentionally closed Plaintiff's arm in the food aperture; (4) retaliatory misconduct claim against Defendants Cowher and Glenn on April 10, 2009; (5) Eighth Amendment claim against Defendant Wiedow for placing jagged rock into food on February 27, 2010; and (6) excessive force claim on February 24, 2010 against Defendant Eidem.  Defendants will be directed to file an answer to these remaining claims.  An appropriate order follows.

---

[6] While Plaintiff casually mentions Defendants Svab, Jacobs and Alberts with respect to this issue, he fails to specifically allege any claims against them and states that Defendants Reno and Alshefski were the defendants involved in this conduct.