## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL ADDERLY, | : | CIVIL NO. 3:11-CV-694 |
| | : | |
| Plaintiff, | : | (Judge Kosik) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| C.O. EIDEM, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction.

Prisoners filing civil rights lawsuits in federal court must navigate a series of procedural requirements.  First, they must ensure that their claims are timely filed within the two year statute of limitations prescribed for federal civil rights claims.  In addition, prisoners must take care to fully exhaust any administrative remedies within the prison system before filing suit, since such administrative exhaustion is a legal prerequisite to litigation.

In the instant case, the defendants have filed a motion for summary judgment which challenges inmate Adderly's compliance with these two procedural requirements, arguing that Adderly's remaining claims in this lawsuit are either unexhausted or untimely. (Doc. 77.)  Adderly has belatedly responded to this motion, (Doc. 89.), albeit in a fashion which is largely unresponsive to the defendants' claims and arguments. (Doc. 89.)  Despite this inadequate response by Adderly, we have

undertaken an independent review of the record, and for the reasons set forth below we recommend that this motion for summary judgment be granted, in part, and denied, in part.

## II.    Factual Background and Procedural History

We do not write upon a blank slate in this case. Quite the contrary, the contours of this litigation have been shaped and defined by a series of ruling over the past five years.

This is a federal civil rights lawsuit brought by Nathaniel Adderly, a state prisoner, against various staff at the Pennsylvania Department of Corrections. Adderly first filed this case on April 13, 2011. (Doc. 1.) Adderly's initial complaint lodged a wide array of legal claims against numerous correctional officers and staff. As a result of prior rulings by the district court, a number of claims and defendants have been dismissed from this lawsuit. (Doc. 49.) The district court also previously held as a general matter that any claims presented by Adderly arising prior to April 9, 2009, were time-barred by the statute of limitations. (Id.) In light of these rulings it appears that six claims naming seven correctional officers remain in this lawsuit. These surviving claims are as follows: First, Adderly has claimed that Corrections Officers Cowher and Glenn issued him a retaliatory misconduct on April 10, 2009. (Doc. 33, ¶¶ 80–107.) Second, Adderly has alleged that from April 10, 2009, through April 29,

2010, Officer Reno subjected him to sexual harassment. (Doc. 33, ¶¶ 27-32, 92-100.) Third, Adderly also has asserted that from April 10, 2009, through April 29, 2010, Officers Reno and Alshefski failed to provide him with adequate nourishment. (Doc. 33, ¶¶ 10-11, 92.) Fourth, Adderly has averred that on or about February 27, 2010, Officer Weidow inserted a jagged rock into plaintiff's food tray, causing Adderly to nearly choke. (Doc.33, ¶¶ 17, 124.) Fifth, Adderly has contended that Officer Resendes used excessive force on him in January of 2010 by intentionally slamming his hand in the food aperture. (Doc. 33, ¶ 101.) Finally, Adderly has maintained that on February 24, 2010, he was abused during a cell extraction by Officer Eidem. (Doc. 33, ¶¶ 135-149.)

The defendants have now moved for summary judgment with respect to these remaining claims on procedural grounds, arguing that the claims are either time-barred by the statute of limitations, or that Adderly has failed to fully exhaust his administrative remedies with respect to these claims prior to filing this lawsuit. (Doc. 77.)[1] This motion is supported by exhibits detailing the timing of these events and Adderly's efforts at administrative exhaustion. (Docs. 80 and 81.)

---

[1] The defendants have also expressly reserved the right to file a summary judgment motion relating to the merits of any claims which are not procedurally barred.

After a number of months elapsed without action on Adderly's part to respond to this motion, we directed a response from the plaintiff. (Doc. 88.) That response was filed by Adderly on May 16, 2016, (Doc. 89.), but was largely unresponsive to the merits of the defendants' claims. While Adderly's response did not illuminate these claims in any appreciable way, we have independently reviewed the record in this case, and for the reasons set forth below, recommend that this motion for summary judgment be granted, in part, and denied, in part, as follows: The following claims advanced by Adderly should be dismissed for failure to fully and properly exhaust the administrative remedies available to the plaintiff: (1) Adderly's averment that on or about February 27, 2010, Officer Weidow inserted a jagged rock into plaintiff's food tray, causing Adderly to nearly choke; (2) Adderly's contention that Officer Resendes used excessive force on him in January of 2010 by intentionally slamming his hand in the food aperture; and (3) Adderly's claim that on February 24, 2010, he was abused during a cell extraction by Officer Eidem. In all other respects the summary judgment motion should be denied.

### III.   Discussion

#### A.   Rule 56–The Legal Standard

The defendants have moved for summary judgment in this case pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) of the Federal Rules of Civil

Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v.

Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden at trial," summary judgment is appropriate.

Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving

party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477

U.S. at 249.   There must be more than a scintilla of evidence supporting the

nonmoving party and more than some metaphysical doubt as to the material facts.  Id.

at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).  In making this determination, the court must "consider all evidence in the

light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub.

Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to

disputed material issues of fact must show by competent evidence that such factual

disputes exist.  Moreover, a party who seeks to resist a summary judgment motion by

citing to disputed material issues of fact must show by competent evidence that such

factual disputes exist.  Further, "only evidence which is admissible at trial may be

considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc.

v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with

particular force to parties who attempt to rely upon hearsay statements to establish

material issues of fact which would preclude summary judgment.  With respect to such

claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [to be filed by the movant],

as to which it is contended that there exists a genuine issue to be tried"; if the

nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the

Local Rules, the failure to follow these instructions and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement.  This Local Rule serves several
> purposes.  First, it is designed to aid the court in its determination of
> whether any genuine issue of material fact is in dispute.  Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific
> facts showing that there is a genuine issue for trial.*'  477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr.

5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these

litigation responsibilities in this regard simply by citing the fact that he is a *pro se*

litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No.

09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are

not excused from complying with court orders and the local rules of court"); Thomas

v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8,

2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### B.    The Prison Litigation Reform Act's Exhaustion Requirement

In this case, the Department of Corrections maintains a general grievance system, DC-ADM 804 that offers a three-phase grievance and appeals procedure. Pursuant to DC-ADM 804, inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred.  If the inmate is unsatisfied with the initial review of his grievance, he may appeal the decision to the Facility Manager (Superintendent).  Upon receiving a decision from the Superintendent, the inmate may file an appeal with the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days of the Superintendent's decision.

In their summary judgment motion the defendants urge the court to grant judgment in their favor on a number of the plaintiff's claims because they contend that Adderly failed to fully and properly exhaust the administrative remedies available to him under Department of Corrections procedures.  In this case Adderly's alleged failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement applies to a wide-

range  of inmate complaints, including damages complaints like those made here

grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372

F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While this

exhaustion requirement is not a jurisdictional bar to litigation, this requirement is

strictly enforced by the courts.   This rigorous enforcement is mandated by a

fundamental recognition that § 1997e's exhaustion requirement promotes important

public policies.  As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.   They include (1) avoiding premature
> interruption of the administrative process and giving the agency a chance
> to discover and correct its own errors; (2) conserving scarce judicial
> resources, since the complaining party may be successful in vindicating
> his rights in the administrative process and the courts may never have to
> intervene; and (3) improving the efficacy of the administrative process.
> Each of these policies, which Congress seems to have had in mind in
> enacting the PLRA, is advanced by the across-the-board, mandatory
> exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion
> requirement better serves the policy of granting an agency the
> "opportunity to correct its own mistakes with respect to the programs it
> administers before it is haled into federal court."  Moreover, "even if the
> complaining prisoner seeks only money damages, the prisoner may be
> successful in having the [prison] halt the infringing practice" or fashion
> some other remedy, such as returning personal property, reforming
> personal property policies, firing an abusive prison guard, or creating a
> better screening process for hiring such guards.  And when a prisoner
> obtains some measure of affirmative relief, he may elect not to pursue his
> claim for damages.  In either case, local actors are given the chance to
> address local problems, and at the very least, the time frame for the

prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d

-11-

289 (3d Cir. 2000); <u>Bolla v. Strickland</u>, 304 F. App'x 22 (3d Cir. 2008); <u>Jetter v.</u>

<u>Beard</u>, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, applying this procedural default component to the exhaustion

requirement, <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form,
> . . . to the extent the identity of a defendant was "a fact relevant to the
> claim," Pennsylvania's prison grievance policy mandated that the
> identification be included in the inmate's statement of facts on the
> grievance form. And, . . . in the absence of any justifiable excuse, a
> Pennsylvania inmate's failure to properly identify a defendant constituted
> a failure to properly exhaust his administrative remedies under the
> PLRA.

<u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557 (3d Cir. 2005).[2]

Thus, "it is clear, regardless of the purpose of the requirement, that <u>Spruill</u> requires the

prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon

pain of procedural default." <u>Hemingway v. Ellers</u>, No. 07-1764, 2008 WL 3540526,

*11 (M.D.Pa. Aug.12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined

exception. If the actions of prison officials directly caused the inmate's procedural

---

[2]While the <u>Williams</u> decision is not precedential, it is highly persuasive as a
"paradigm of the legal analysis [this court] should . . . follow." <u>Drinker v.</u>
<u>Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996). We find the reasoning
in <u>Williams</u> compelling, and recommend that this reasoning be extended to the
instant case.

-12-

default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of  failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra,  49 F. App'x at 368.  See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming

that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).   Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

## C.   The Defendants' Motion for Summary Judgment on the Grounds of Failure to Exhaust Administrative Remedies Should Be Granted, in Part

Guided by these legal tenets we recommend that the defendants' motion for summary judgment based upon Adderly's failure to exhaust his administrative remedies should be granted, in part.  As we understand it, the defendants contend that the following claims made by Adderly in this lawsuit have not been fully, and properly, exhausted:  (1)Adderly's claim that from April 10, 2009, through April 29,

2010, Officer Reno subjected him to sexual harassment; (2) Adderly's assertion that

from April 10, 2009, through April 29, 2010, Officers Reno and Alshefski failed to

provide him with adequate nourishment; (3) Adderly's averment that on or about

February 27, 2010, Officer Weidow inserted a jagged rock into plaintiff's food tray,

causing Adderly to nearly choke; (4), Adderly's contention that Officer Resendes used

excessive force on him in January of 2010 by intentionally slamming his hand in the

food aperture; and (5) Adderly's claim that on February 24, 2010, he was abused

during a cell extraction by Officer Eidem.

In several instances, the records submitted by the Department of Corrections,

which have not been disputed in any meaningful way by Adderly, support the

defendants' contention that Adderly's specific complaints have not been fully

exhausted.  For example, Adderly's averment that on or about February 27, 2010,

Officer Weidow inserted a jagged rock into plaintiff's food tray, causing Adderly to

nearly choke and Adderly's claim that on February 24, 2010, he was abused during a

cell extraction by Officer Eidem appear to be unexhausted, in that Adderly has

procedurally defaulted on these claims during the administrative exhaustion process.

With respect to these two claims we find that on March 7, 2010, Adderly filed

Grievance No. 310247, claiming a large rock was hidden in the food tray.  (Doc. 81,

¶¶49-59.)   This initial grievance was denied, and Adderly appealed to the

superintendent, but in his appeal to the superintendent Adderly raised other issues. Thus, Adderly did not pursue this claim about a rock placed in his food in his initial administrative appeal.  (Id.)  The superintendent denied Adderly's grievance and he submitted a final grievance to SOIGA, but neglected to provide SOIGA with all of the required grievance documentation.  Therefore, Adderly's appeal was dismissed.  (Id.) Thus, with respect to any claim that a stone was placed in Adderly's food in February 2010, that claim has been procedurally defaulted by Adderly on two scores since the plaintiff failed to preserve this claim in his initial administrative appeal to the superintendent, and further failed to perfect his appeal to the final level of administrative review.  This claim should, therefore, be dismissed.

Adderly's claim that on February 24, 2010, he was abused during a cell extraction by Officer Eidem suffers a similar fate.  On March 7, 2010, Adderly filed Grievance No. 310247, which alleged that staff used excessive force against him in the course of a February 17, 2010, cell extraction.  (Id.)  However, in this grievance Adderly stated that he was sprayed with pepper spray in the face by Officer Marachi and cell extraction officers on February 17, 2010.  Nothing in Adderly's grievances that were appealed to final review during this relevant time period involved allegations that Officer Eidem sprayed Adderly in the face with pepper spray.  (Id.)  Given that proper identification of the officers involved in alleged misconduct is part of the

grievance process, <u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557(3d Cir. 2005), Adderly's complete failure to timely identify Officer Eidem in connection with any excessive force grievances in February 2010 constitutes a material procedural default on his part, and compels dismissal of these claims.

Likewise, Adderly's contention that Officer Resendes used excessive force on him in January of 2010 by intentionally slamming his hand in the food aperture appears to have been procedurally defaulted in the grievance process and is now barred by the PLRA.  On this score, we find that on January 26, 2010, Adderly submitted Grievance No. 305408, alleging that Officer Resendes assaulted him.  (Doc. 81, ¶61.)  This initial grievance was timely filed, and that initial grievance was rejected on February 3, 2010.  (Doc. 80-1, Ex. F.)  It appears, however, that two months then elapsed before Adderly submitted an appeal of this initial decision to the superintendent in April, 2010.  (<u>Id</u>.)  The superintendent then denied this appeal as frivolous and untimely, noting that Adderly was well-aware of the timeliness requirements under ADM-804 since Adderly had submitted timely grievance appeals in the past.  This decision was then adopted by SOIGA at the final stage of Adderly's administative appeal process.  It is well-settled that proper exhaustion of a grievance means that a prisoner must refrain both from acting too soon or waiting until it is too late to act.  Thus, "[a]n 'untimely or otherwise procedurally defective administrative

grievance or appeal' does not satisfy the mandatory exhaustion requirement of the PLRA.  Woodford v. Ngo, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir.2004)."  Barrick v. Prison Health Sys./Med., 335 F. App'x 153, 155 (3d Cir. 2009).  Here, with respect to this particular claim, the undisputed evidence shows that Adderly did not timely pursue an appeal of his grievance.  The failure to do so now bars further consideration of this particular claim.

As for Adderly's two remaining claims which are challenged on administrative exhaustion grounds–Adderly's claim that from April 10, 2009, through April 29, 2010, Officer Reno subjected him to sexual harassment and Adderly's assertion that from April 10, 2009, through April 29, 2010, Officers Reno and Alshefski failed to provide him with adequate nourishment–we conclude that summary judgment is not appropriate.  Our review of the grievances submitted by Adderly which relate to these two legal claims, (Doc. 80-1, Exs. C and D.), convince us that Adderly consistently and timely raised these concerns with prison officials throughout the three-step grievance process prescribed by ADM-804.  With respect to Adderly's sexual harassment claims, not only were those claims timely grieved by Adderly, they were addressed on their merits at each step of the grievance process.  Therefore, this issue appears fully exhausted.  As for Adderly's complaints concerning proper nutrition, this

issue was consistently grieved by Adderly at all three steps of the administrative grievance process, and was addressed on its merits at the first two stages of this process. While the final SOIGA review of this grievance elected to resolve Adderly's complaint on procedural grounds, we do not believe that this fact should wholly negate what appears to have been a timely and consistent effort to raise this particular concern under ADM-7804's grievance procedure. "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013). Therefore, recognizing that failure to exhaust is an affirmative defense as to which the defendants bear the burden of proof and persuasion, we find that the defendants have not affirmatively shown that these two claims were not exhausted by Adderly, and recommend that summary judgment be denied as to these claims.

### D. The Defendants' Motion for Summary Judgment on Statute of Limitations Grounds Should Be Denied

Finally, in their motion for summary judgment, the defendants seek judgment in their favor on statute of limitations grounds on Adderly's claim that Corrections Officers Cowher and Glenn issued him a retaliatory misconduct on April 10, 2009. Noting that the district court had previously found as a general matter that all claims pre-dating April 10, 2009, are time-barred, the defendants now present evidence which shows that this disciplinary citation was heard and addressed on April 9, 2009. On the

basis of this information, defendants argue that Adderly's claims arising out of this disciplinary citation are time-barred by a single day.

Yet, while the defendants advance this claim, they also acknowledge that Adderly administratively appealed this misconduct citation, and it appears that this administrative appeal was not resolved until July of 2009.  (Doc. 80-1, Exs. G-K.) Given the fact that the disciplinary citation appeal process extended well past April, 2009, we conclude that the defendants may not raise the bar of the statute of limitations with respect to this particular claim.  In this regard, it is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations.  For example, it is well settled that the

"continuing conduct of [a] defendant will not stop the ticking of the limitations clock

[once] plaintiff obtained requisite information [to state a cause of action].   On

discovering an injury and its cause, a claimant must choose to sue or forego that

remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting

Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)).   See also

Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the
> timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744,
> 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a
> continuing practice, an action is timely so long as the last act evidencing
> the continuing practice falls within the limitations period; in such an
> instance, the court will grant relief for the earlier related  acts that would
> otherwise be time barred." Brenner v. Local 514, United Bhd. of
> Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).  In
> order to benefit from the doctrine, a plaintiff must establish that the
> defendant's conduct is "more than the occurrence of isolated or sporadic
> acts." West, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry,
> we have recognized that courts should consider at least three factors:  (1)
> subject matter-whether the violations constitute the same type of
> discrimination, tending to connect them in a continuing violation; (2)
> frequency-whether the acts are recurring or more in the nature of isolated
> incidents; and (3) degree of permanence-whether the act had a degree of
> permanence which should trigger the plaintiff's awareness of and duty to
> assert his/her rights and whether the consequences of the act would
> continue even in the absence of a continuing intent to discriminate. See
> id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State
> Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree
> of permanence" is the most important of the factors. See Berry, 715 F.2d
> at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

Further, given the requirements of the Prison Litigation Reform Act, (PLRA), which imposes an administrative exhaustion requirement upon prisoner-plaintiffs, it has been held that equitable tolling of any statute of limitations is appropriate while an inmate exhausts his administrative remedies. This conclusion has been consistently reached by those appellate courts which have addressed this question in precedential opinions. See e.g., Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011); Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000). This view has also often been espoused by the United States Court of Appeals for the Third Circuit, albeit in non-precedential opinions, where the court of appeals has held that: "[b]ecause exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts." Thompson v. Pitkins, 514 F. Appx. 88, 90 (3d Cir. 2013); Paluch v. Sec'y Pa. Dep't of Corr., 442 Fed. Appx. 690, 694 (3d Cir. 2011)(same). See e.g., Ballard v. Williams, 3:10-CV-1456, 2010 WL 7809047 (M.D. Pa. Dec. 9, 2010) report and recommendation adopted, 3:10-CV-1456, 2011 WL 5089726 (M.D. Pa. Oct. 25, 2011); Ozoroski v. Maue, No. Civ. A. No. 08-0082, 2009 WL 414272, at *7 (M.D. Pa. Feb. 18, 2009); Carter v. Pa. Dep't of Corrections, Civ.

A. No. 08-0279, 2008 WL 5250433, at *11 (E.D. Pa. Dec. 17, 2008) ("[T]he statute of limitations begins to run only when [a] plaintiff has exhausted his administrative remedies under the PLRA."); Cooper v. Beard, Civ. A. No. 06-0171, 2006 WL 3208783, at *8 (E.D. Pa. Nov. 2, 2006) ("Because an inmate would be placed in a situation where his suit would either be barred from federal court for failure to exhaust administrative remedies under the PLRA, or time-barred because he had pursued those administrative remedies . . . the statute of limitations for an inmate's § 1983 claims are tolled while he exhausts his administrative remedies.").

In this case, the defendants aptly note that the inital disciplinary decision was reached on April 9, 2009, one day beyond the statute of limitations.  However, it is also undisputed that Adderly pursued on-going grievance proceedings relating to this misconduct citation which extended beyond April 2009, and thus tolled the limitations period.  Therefore, we submit that Adderly is entitled to equitable tolling of the statute of limitations with respect to this matter while he pursued the administrative exhaustion required by law.  Once the statute of limitations is equitably tolled we conclude that the summary judgment motion relating to this specific claim, which seeks to bar this claim on statute of limitations grounds, should be denied.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 77.) be GRANTED, in part, and DENIED, in part, as follows:

The following claims advanced by Adderly should be DISMISSED for failure to fully and properly exhaust the administrative remedies available to the plaintiff: (1) Adderly's averment that on or about February 27, 2010, Officer Weidow inserted a jagged rock into plaintiff's food tray, causing Adderly to nearly choke; (2), Adderly's contention that Officer Resendes used excessive force on him in January of 2010 by intentionally slamming his hand in the food aperture; and (3) Adderly's claim that on February 24, 2010, he was abused during a cell extraction by Officer Eidem.

In all other respects the summary judgment motion should be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of August 2016.


                                        _S/Martin C. Carlson_
                                        Martin C. Carlson
                                        United States Magistrate Judge