# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATHANIEL ADDERLY,

   Plaintiff,

   v.

C.O. EIDEM, *et al.*,

   Defendants

: Civil No. 3:11-cv-694

:

: (Judge Mariani)

:

:

:

:

:

## MEMORANDUM

## I. Background

Plaintiff Nathaniel Adderly ("Adderly"), an inmate who, at all relevant times, was incarcerated at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville"),[1] initiated the instant action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 33). The remaining Defendants are Corrections Officers Cowher, Glenn, Reno, and Alshefski. (*See* Docs. 95, 96). Currently pending before the Court are cross-motions for summary judgement filed by Adderly on October 7, 2016 (Doc. 98) and by the remaining named Defendants on October 27, 2016 (Doc. 104). For the reasons provided herein, the Court will deny Adderly's motion and grant Defendants' motion.

## II. Summary Judgment Standard of Review

---

[1] Adderly is currently incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania. (Doc. 45).

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the movant's,

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am.,*

*Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"The rule is no different where there are cross-motions for summary judgment."

*Lawrence v. City of Philadelphia,* 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled
> to summary judgment, and the making of such inherently contradictory claims
> does not constitute an agreement that if one is rejected the other is
> necessarily justified or that the losing party waives judicial consideration and
> determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir. 1968). Thus, "when presented

with cross[-]motions for summary judgment, the Court must consider the motions

separately, and view the evidence presented for each motion in the light most favorable to

the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d 418, 433 (M.D. Pa.

2014) (citations omitted). "[E]ach movant must demonstrate that no genuine issue of

material fact exists; if both parties fail to carry their respective burdens, the court must deny

[both] motions." *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III.    Statement of Undisputed Facts[2]

The remaining Defendants in this action are Corrections Officers Cowher, Glenn,

Reno, and Alshefski, past and present employees of the Pennsylvania Department of

Corrections at SCI-Frackville. (Doc. 105, Defendants' Statement of Material Facts, ¶ 2;

Doc. 113, Plaintiff's Statement of Material Facts, ¶ 2). The remaining claims are as follows:

(1) that Defendants Cowher and Glenn issued Adderly retaliatory misconducts on April 10,

---

[2]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statement of material facts. (Docs. 105, 113, 114). Adderly did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1.

To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the Court cites directly to the statements of material facts.

4

2009, and (2) that from April 10, 2009 through April 29, 2010, Defendants Reno and Alshefski failed to provide Adderly with adequate nourishment. (Doc. 105, ¶ 3; Doc. 113, ¶ 2).

Defendant Cowher passed away on or about August 23, 2016. (Doc. 105, ¶ 4; Doc. 99, Suggestion of Death of Defendant Cowher).

On February 11, 2016, Adderly's deposition was taken. (Doc. 105, ¶ 5). Adderly was incarcerated at SCI-Frackville from October 9, 2007 to March 2, 2010. (*Id.*). On January 6, 2010, Adderly was in the Restricted Housing Unit ("RHU"), in EB cell 1. (*Id.*).

Adderly asserted that Officer Eidem assaulted him on April 5, 2009 and February 24, 2010.[3] (Doc. 105, ¶ 6; Doc. 113, ¶ 6).

During his deposition, Adderly initially stated that Defendants Cowher and Glenn did not issue any misconducts to him. (Doc. 105, ¶ 7). He also testified that Defendant Glenn issued a misconduct charging him with assault. (*Id.*).

On April 5, 2009, Defendant Glenn issued Misconduct Number B193825 charging Adderly with assault. (Doc. 105, ¶ 7; Doc. 107, p. 42). The parties dispute whether this misconduct was retaliatory. (Doc. 105, ¶ 7). Adderly contends that he appealed the misconduct to final review. (*Id.*). Adderly admits that he has no documentation of the appeal. (*Id.*).

---

[3]    On September 28, 2016, Adderly's assault claim against Defendant Eidem was dismissed, and Corrections Officer Eidem was terminated as a party to this action. (*See* Docs. 95, 96).

On April 5, 2009, Defendant Cowher issued Misconduct Number B193823 charging Adderly with assault. (Doc. 105, ¶ 8; Doc. 107, p. 46). The parties dispute whether this misconduct was retaliatory. (Doc. 105, ¶ 8). Adderly states that he appealed this Misconduct to final review. (*Id.*). Adderly states that he has no proof of the appeal because his personal records were lost. (*Id.*). Adderly denies assaulting Defendants Cowher and Glenn. (*Id.*).

The parties dispute whether Adderly was interviewed by a State Police Officer. (Doc. 113, ¶¶ 8-9; Doc. 114, Defendants' Counter Statement of Material Facts, ¶¶ 8-9). Adderly states that he was interviewed by a State Police Officer on April 6, 2009, and complained that he was assaulted by CO Eidem, which was assisted by Defendants Cowher and Glenn. (Doc. 113, ¶ 8). Adderly states that he also reported to the Police Officer that CO Eidem issued a false misconduct against him. (*Id.* at ¶¶ 8-9).

On April 10, 2009, a misconduct hearing was held before hearing examiner Sharon Luquis. (Doc. 113, ¶¶ 13, 15; Doc. 107, pp. 43, 47; Doc. 114, ¶ 13). Hearing examiner Luquis ultimately found Adderly guilty of the charges. (Doc. 113, ¶ 18; Doc. 107, pp. 43, 47). Adderly was subsequently charged with assault and a Schuylkill County jury acquitted him of the charges in March 2010. (Doc. 113, ¶¶ 18-19; Doc. 114, ¶¶ 18-19).

The parties dispute whether Defendants Reno and Alshefski denied Adderly meals. (Doc. 113, ¶ 21; Doc. 114, ¶ 21). Adderly asserts that Defendants Reno and Alshefski

6

denied him meals from approximately April 5, 2009 to April 29, 2010, while he was in the RHU at SCI-Frackville. (Doc. 105, ¶¶ 9-10; Doc. 113, ¶ 21). Adderly estimates that Defendants Reno and Alshefski each denied him approximately twenty-six or twenty-seven breakfast and lunch meals during this time frame. (Doc. 105, ¶¶ 9-10). Defendants Reno and Alshefski worked the 6:00 to 2:00 shift. (Id.). Adderly testified that he did not receive any partial meals. (Id.).

On April 22, 2009, Adderly filed Grievance Number 270930 against Defendants Reno and Alshefski pertaining to the denial of meals. (Doc. 105, ¶ 10; Doc. 107, p. 51). Adderly stated that he appealed the Grievance to final review. (Doc. 105, ¶ 10).

Defendant Glenn is presently employed by the Pennsylvania Department of Corrections as a Corrections Officer 3 at the State Correctional Institution at Graterford and has held that position since March 2015. (Doc. 105, ¶ 11). Prior to that, Glenn held the position of Corrections Officer 1 at SCI-Frackville. (Id.). As a Corrections Officer 1, Glenn was responsible for the care, custody and control of inmates. (Doc. 105, ¶ 12). Her duties included monitoring movements to and from the gym, classes and library, handing out passes, and conducting searches of inmates and their cells. (Id.). Defendant Glenn also issued misconduct reports to inmates, who violated the rules and policies of the Department. (Id.). Defendant Glenn reported to the Block Sergeant. (Id.).

On April 5, 2009, at approximately 2030 hours, Defendant Glenn overheard yelling

coming from the C-Block lobby. (Doc. 105, ¶ 13). She responded and saw inmate Adderly yelling at CO Eidem. (Id.). The parties dispute whether Adderly assaulted any corrections officers during this encounter. (Doc. 105, ¶ 13; Doc. 113, ¶ 6).

On April 5, 2009, Defendant Glenn issued a Misconduct Report to Adderly charging him with assault. (Doc. 105, ¶ 17; Doc. 107, p. 42). It is a violation for inmates to assault staff or other inmates. (Doc. 105, ¶ 17). The parties dispute whether Adderly was served with a copy of the Misconduct Report that same day. (Doc. 105, ¶ 17; Doc. 107, p. 42; Doc. 113, ¶¶ 15-16).

Defendant Alshefski is presently employed by the Pennsylvania Department of Corrections as a Corrections Officer 1 at SCI-Frackville. (Doc. 105, ¶ 21). He has held that position since 1999. (Id.). In 2009 and 2010, Alshefski was assigned to the RHU or E-block and worked the 6:00 a.m. to 2:00 p.m. shift. (Doc. 105, ¶ 22). The RHU houses inmates who are disciplinary problems or who require administrative custody. (Id.). As a Corrections Officer 1, his duties included handing out the breakfast and lunch meals, performing security rounds and escorting inmates to and from yard and shower. (Id.). Defendant Alshefski reported to the Block Sergeant. (Id.).

Before an inmate would receive a food tray through the opening in his cell door, called a wicket, it is prison policy that the inmate stand at the back of the cell with the light on. (Doc. 105, ¶ 23). This procedure is followed for the safety and security of staff, and to

8

confirm that the inmate is present and alive. (*Id.*). Some inmates in the RHU have thrown urine, feces and other substances on Officers who have opened the wicket. (*Id.*). If an inmate did not follow these procedures, it was considered a refusal by the inmate and the inmate would not receive a food tray. (Doc. 105, ¶ 24). This would occur when the inmate was sleeping or refused to stand at the back of the cell with the light on. (*Id.*). If staff noticed that a food item was missing, the missing food item would be replaced or a whole new tray would be provided to the inmate. (*Id.*).

Defendant Alshefski stated that Adderly was argumentative and sometimes violent, and he received many misconducts while in the RHU, including assault misconducts. (Doc. 105, ¶ 25).

Officer Reno is presently employed by the Pennsylvania Department of Corrections as a Corrections Officer 1 at SCI-Frackville. (Doc. 105, ¶ 27). He has held that position since November 7, 2003. (*Id.*). In 2009 and 2010, Reno was assigned to the RHU or E-block at SCI-Frackville and worked the 6:00 a.m. to 2:00 p.m. shift. (Doc. 105, ¶ 28). He last worked in the RHU on November 31, 2010. (*Id.*). As a Corrections Officer 1, his duties included making security rounds, handing out food trays, and conducting yard and shower movements. (*Id.*). He reported to the Block Sergeant. (*Id.*).

Inmates in the RHU regularly complained about the size of the food portions. (Doc. 105, ¶ 29). Defendant Reno believed the food portions were plentiful. (*Id.*). Defendant

Reno stated that Adderly was a regular inmate in the RHU, as he had been found guilty of numerous misconducts. (Doc. 105, ¶ 31).

## IV.    Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Retaliation Claim

#### 1.    Defendant Cowher

Defendants argue that Adderly's retaliation claim against CO Cowher must be dismissed because he recently passed away and no substitution has taken place for the

10

decedent. (Doc. 106, p. 3; Doc. 99, Suggestion of Death of Defendant Cowher).

Federal Rule of Civil Procedure 25(a)(1) provides as follows:

> If a party dies and the claim is not extinguished, the court may order
> substitution of the proper party. A motion for substitution may be made by
> any party or by the decedent's successor or representative. If the motion is
> not made within 90 days after service of a statement noting the death, the
> action by or against the decedent must be dismissed.

FED. R. CIV. P. 25(a)(1). On October 13, 2016, Defendants filed a Suggestion of Death of

Defendant Cowher, indicating that he passed away on or about August 23, 2016. (Doc. 99).

To date, no motion for substitution has been filed. Consequently, the retaliation claim

against Defendant Cowher will be dismissed pursuant to Federal Rule of Civil Procedure

25(a)(1).

### 2. Defendant Glenn

Adderly asserts that Defendant Glenn issued a misconduct against him in retaliation

for Adderly's complaint to the State Police that he was assaulted by CO Eidem. (Doc. 113,

p. 3, ¶ 17). The First Amendment offers protection for a wide variety of expressive

activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in

the prison context, where legitimate penological interests must be considered in assessing

the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

Retaliation for expressive activities can infringe upon an individual's rights under the First

Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a

11

retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

Defendants contend that Adderly cannot prove the first element of his retaliation claim because he has failed to identify any prior complaints or grievances he made against Defendant Glenn that would constitute a protected activity under the First Amendment. (Doc. 106, p. 7; Doc. 115, p. 7). Rather, Defendants contend that Adderly's purported complaints to the State Police were made *after* the misconducts were issued. (*Id.*). The Court assumes for purposes of this analysis that Adderly was engaged in a constitutionally protected activity by making complaints to the State Police in an investigative interview.

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah*, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002), quoting *Allah*, 229 F.3d at 225. Adderly asserts that he suffered adverse action in the form of receiving misconducts. Defendants concede that the

12

misconducts can constitute adverse action against Adderly for purposes of the retaliation analysis. (Doc. 115, p. 8). Thus, Adderly has satisfied the second *Rauser* prong.

In analyzing the third element, the Court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. The plaintiff must show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d at 334. Where the prisoner is found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate penological reason. *See Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (not precedential); *Romansky v. Stickman*, 147 F. App'x 310, 312 (3d Cir. 2005) (not precedential). A finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the action taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment. *Williams v. Folino*, 664 F. App'x 144, 148-49 (3d Cir. 2016) (not precedential) (quoting *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016); *Dyson v. Kocik*, 689 F.2d 466, 467 (3d

Cir. 1982)).

Defendants contend that Adderly is unable to set forth any protected conduct that could have plausibly motivated the alleged acts of retaliation, as the only complaints or grievances that Adderly made against the Defendants were made after the actions occurred, and therefore could not have been a causal factor in the issuance of the misconducts. (Doc. 106, p. 7). The evidence reflects that on April 5, 2009, Adderly was involved in a physical altercation with corrections officers on his housing block. (Doc. 107, p. 42, Misconduct Report). The evidence further reflects that on April 5, 2009, Defendant Glenn issued a misconduct against Adderly charging him with assault. (Doc. 107, p. 42, Misconduct Report).[4] Adderly asserts that on April 6, 2009, a State Police Officer conducted an investigative interview, at which time Adderly made a complaint about the alleged assault by CO Eidem.[5] (Doc. 113, p. 2, ¶ 8). Although Adderly states that the

_____

[4]    The misconduct report described the incident as follows:

On the above date and approx time [April 5, 2009, 2030 hours] this officer overheard yelling coming from C Block Lobby. This officer responded and saw I/M Adderly yelling at CO Eidem. I/M Adderly then swung his fist at CO Eidem. This officer then attempted to assist CO Eidem and CO Cowher in restraining I/M Adderly at which time I/M Adderly struck this officer in the left cheek with his fist. This officer then assisted in placing I/M Adderly on the ground. This officer assisted in placing restraints on I/M Adderly's right arm and then also his left arm. I/M Adderly did not stop resisting until restrained.

(Doc. 107, p. 42).

[5]    Adderly has not provided any evidence in support of his contention that a State Police Officer conducted an investigation on April 6, 2009. The record is devoid of any State Police investigative interview or report.

misconducts were issued on April 10, 2009, the undisputed evidence reflects that the misconducts were issued on April 5, 2009, (see Doc. 107, pp. 42, 46, Misconduct Reports), and the misconduct hearing was held on April 9, 2009, (see Doc. 107, pp. 43, 47). The evidence thus reflects that Defendant Glenn issued the misconduct before Adderly's complaints to the State Police about the alleged assault by CO Eidem. Accordingly, the Court finds that Adderly is unable to set forth any protected conduct that could have plausibly motivated the alleged acts of retaliation, as the only complaint that Adderly made pertaining to the alleged assault by CO Eidem was made after the actions occurred, and therefore could not have been a causal factor in the issuance of the misconduct.

Moreover, Adderly was found guilty on the misconduct charges that form the basis of his retaliation claim. (Doc. 1; Doc. 107, pp. 43, 47). The determinations of guilt were accompanied by written statements detailing the evidence that hearing examiner Luquis relied on in reaching her conclusions. (Doc. 107, pp. 43, 47). Accordingly, Defendants have satisfied their burden of presenting a "quantum of evidence" that Adderly committed the misconducts as charged. *Williams*, 664 F. App'x at 148-49 (quoting *Watson*, 834 F.3d at 426). Consequently, summary judgment will be granted in Defendant Glenn's favor with respect to Adderly's retaliation claim against him.

B.     Denial of Food Claim

The Eighth Amendment protects prison inmates from cruel and unusual punishment.

15

*See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.*

Adderly asserts that Defendants Reno and Alshefski each denied him a total of twenty-six or twenty-seven meals over a period of one year, in violation of his Eighth Amendment rights. In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-63. Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose. *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002); *see also*

16

*Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (holding a "substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment"). In the same way that an inmate relies on prison officials to provide appropriate medical care, *see Estelle v. Gamble*, 429 U.S. 97 (1976), and protection from assaults by other inmates, *see Farmer*, 511 U.S. 825, inmates rely on prison officials to provide them with adequate sustenance on a daily basis. Although the repeated and unjustified failure to do so amounts to a serious deprivation, the purported denial of a few single meals on various days is not of such magnitude as to rise to the level of a constitutional violation. *See Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009), citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).

A Fifth Circuit case is particularly insightful in determining whether the deprivation of food rises to the level of a constitutional injury. In *Talib*, the Fifth Circuit reasoned "whether deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). The plaintiff in *Talib* alleged that he missed approximately fifty meals over five months and lost about fifteen pounds. *Id.* The court concluded that he had not alleged a claim under the Eighth Amendment because "missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period. We are therefore doubtful that Talib was denied anything close to a minimal measure of life's necessities." *Id.*

17

In the case at bar, Adderly testified that he missed approximately fifty-four meals over the course of a one-year period. Assuming that an inmate receives a total of 1,095 meals per year (365 days x 3 meals per day), Adderly missed approximately 4.9% of his total meals in one year, or 4.5 meals per month for one year. This amounts to a *de minimis* injury to Adderly and not an "extreme deprivation" for purposes of the Eighth Amendment. *See Jones v. Vasquez*, 232 F.3d 894, at *1 (9th Cir. 2000) (holding that an intentional deprivation of three to five meals over the course of one month was not sufficiently severe); *Hopkins v. Apadaca*, 2012 WL 1999539, at *4 (W.D. Pa. May 10, 2012), *report and recommendation adopted by* 2012 WL 1999487 (W.D. Pa. June 4, 2012) (holding that a deprivation of five meals over a two-month period, or "roughly one of every twelve meals" was not sufficiently serious).

As a result of the missed meals, Adderly testified that he was embarrassed, dehydrated, and lost weight. (Doc. 107, pp. 38-39). He further testified that he suffers from hypoglycemia and missing meals could cause a drop in blood sugar. (*Id.*). However, Adderly did not provide any RHU or medical records that would support a finding that he suffered any weight loss or hypoglycemic episodes during this time period. Instead, Adderly testified that he "can't recall" how much weight he purportedly lost, and he generally "need[s] larger amounts of sugar." (Doc. 107, p. 39). Adderly's reliance on his own self-serving testimony is insufficient without any other corroborating evidence in the record.

18

*See Lujan*, 497 U.S. at 888. Furthermore, Adderly does not assert that he was denied dinner on these days. Nor does Adderly present any evidence that the dinners were nutritionally inadequate to maintain his health. *See Adderly v. Ferrier*, 2010 WL 2640596, at *8 (W.D. Pa. June 2, 2010) ("mere hunger is not sufficient to show an Eighth Amendment violation, there must be a denial of adequate nutrition and absent evidence concerning the nutritional value of the one meal a day which he did undoubtedly receive during this seven day period, Plaintiff cannot sustain his burden to show an Eighth Amendment violation."). Adderly does not provide any evidence that he suffered any medical or mental health complications during this time in the RHU, let alone an ailment attributable to an allegedly inadequate diet. Indeed, he does not present "evidence" at all. Adderly cannot satisfy his Rule 56 burden with conjecture and supposition. *See Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Rule 56 requires affirmative evidence in support of a claim. *See* FED. R. CIV. P. 56(e). The record is devoid of any such corroborative evidence.

Moreover, Defendants contend that Adderly may have missed meals due to his failure to comply with the reasonable security procedures in the RHU. (Doc. 106, pp. 11-12). The uncontroverted record reflects that RHU policy requires inmates to stand at the

back of their cells, with the lights on, in order to receive a meal tray. (Doc. 105, ¶¶ 23-24, 30). If inmates do not comply with this procedure, it is considered a refusal and they do not receive a meal tray. (*Id.*). Additionally, if an inmate is sleeping, this could result in the denial of a meal. (Doc. 105, ¶ 24). Adderly failed to offer any evidence to dispute the fact that these procedures were in place during his time in the RHU.[6] Adderly cannot survive Rule 56 scrutiny by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Consequently, judgment will be entered in favor of Defendants Reno and Alshefski on the Eighth Amendment denial of food claim. *See Adderly v. Ferrier*, 2010 WL 2636109, at *4 (W.D. Pa. June 29, 2010) (concluding that the denial of breakfast and lunch to a prisoner for seven (7) consecutive days, in the absence of a showing that the dinners did not satisfy some minimum daily quantum of calories adequate for health, did not establish an Eighth Amendment violation); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (one meal per day for fifteen days that provides sufficient nutrition to sustain normal health does not offend the Constitution).

---

[6]    Adderly submitted a response from the Superintendent at SCI-Frackville denying his inmate grievance complaining about the food in the RHU. (Doc. 116, p. 7). The Superintendent's response is as follows: "We have received complaints from inmates in the RHU about the size of the food portions. DSCS Kovalchik has addressed this issue. Food Service has confirmed that the size of all food portions is plentiful. I do not see this as a legitimate complaint. Food trays are inspected daily by staff." (*Id.*). This document does not establish, or even imply, that Defendants Reno and Alshefski improperly denied Adderly food, nor does it dispute the fact that, per prison policy, inmates may be denied food for failure to comply with the RHU security procedures.

## V.    Conclusion

Based on the foregoing, Defendants' second motion (Doc. 104) for summary will be granted, and Adderly's motion (Doc. 98) for summary judgment will be denied. A separate Order shall issue.

Date: September ___, 2017

_____
Robert D. Mariani
United States District Judge